THE STATE OF OHIO, APPELLEE, *v.* FIELDS, APPELLANT.

(No. 46678—Decided January 9, 1984.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. John H. Carson, Jr.,* and *Mr. Granville H. Bradley,* for appellant.

DAY, P.J. Defendant-appellant Otis Fields ("defendant") appeals his conviction for the murder (violation of R.C. 2903.02) of Clifford Drake and attempted murder (violation of R.C. 2923.02) of Reginald Lewis. For the reasons adduced below the judgment is affirmed.

I

On July 12, 1982, an altercation took place on Terrace Road in East Cleveland, Ohio, involving the defendant's brother, Anthony Fields, and Reginald Lewis. Lewis was a passenger in Clifford Drake's car whose path was impeded by the defendant, his brother, and others who were riding bicycles in the middle of the street. A conflict in the evidence exists as to details, but it is undisputed that Lewis exchanged words with Anthony Fields as the car passed the bicyclists.

Enraged over the incident and the fact that a third Fields brother had been murdered several weeks earlier, Anthony, upon arriving home, resolved not to travel without a gun in the future. Exchanging bicycles for the defendant's car, the defendant and his brother decided to visit the defendant's girlfriend after stopping for refreshments at the Convenient Food Mart on the corner of Euclid Avenue and Allandale Street. Anthony brought a shotgun, plus one .22 caliber and one .38 caliber handgun into the car.

At the Convenient Food Mart the Fields brothers encountered Lewis and Drake for a second time. Drake, a security guard supervisor for the Downtown Detective Agency, was collecting payment from Convenient, a customer of Downtown's security services. Lewis, the manager of another business customer of Downtown, was receiving a ride home from work with Drake.

Realizing that he was confronting the same individual who had insulted him earlier, Anthony Fields drew the .38 caliber handgun and pointed it at Lewis as the latter and Drake approached Drake's car which was parked across the street

from the store. After forcing Lewis to "back down," Anthony put the gun down and turned around. Suddenly, gunshots rang out. When the shooting subsided Anthony Fields and Clifford Drake lay dead. The defendant and Reginald Lewis both fled the scene with gunshot injuries. Both were treated in the Intensive Care Unit of Huron Road Hospital in East Cleveland later that night.

Police recovered two guns at the site of the incident: the .22 caliber belonging to Anthony Fields, and a .38 caliber belonging to Clifford Drake. The shotgun and Anthony Fields' .38 caliber gun were never located. Bullets lodged in Anthony Fields, Clifford Drake, and the defendant were submitted to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for testing.

The coroner's testimony established that Anthony Fields was shot twice; one bullet entered the right side of the upper back and came to rest in this left chest; and the other entered the side of his arm near the crest of his shoulder and exited his body at the front of his right shoulder.

BCI testimony established that the bullet which killed Anthony Fields was fired by Drake's .38 caliber weapon. The bullet that killed Clifford Drake was also a .38 caliber but fired from a weapon other than Drake's, thus confirming the presence of a second .38 caliber gun at the

scene. A .22 caliber slug was also discovered lodged in a small men's purse that Drake carried. The bullet removed from the defendant was also a .38 caliber but was not fired from Drake's gun. Because the bullet was mutilated from impact it was impossible for BCI to make a conclusive determination, but it bore some of the same characteristics as the .38 slug that killed Drake.[1] Shotgun debris recovered on the scene indicated that the gun was fired at least twice. The defendant was seen running away up Euclid Avenue carrying the shotgun.

On July 13, 1982, the day after the shooting, police questioned the defendant in the hospital. At approximately 9:30 a.m. the police requested permission to speak to the defendant. Permission was given by the nurse supervising the Intensive Care Unit ("ICU") where the defendant was being treated. Anywhere from one to twenty questions may have been asked the defendant. The interrogating officer was unable to recall if the defendant was connected to intravenous or other artificial support systems. No medical evidence was adduced whether the defendant was under medication at the time. According to police, but denied by the defendant, *Miranda* warnings were given. One of the officers involved was previously acquainted with the defendant and he asked the defendant to describe what happened.[2]

---

[1] Defense counsel argued in summation that the physical evidence supported a scenario in which Anthony Fields killed Clifford Drake with a .38 caliber gun after being shot by Drake with a second .38. Then Lewis grabbed Anthony's .38 from the ground and shot at the defendant wounding him.

[2] The defendant testified at the suppression hearing that the interrogating policeman told him:

"[A]ctually we just here [*sic*] to hear you — we are here to hear your side, what happened last night. You are not really a suspect and we don't think you are guilty of anything, it is just that since I know you, I want to hear your side

before this other guy gets a chance to put something on you that may bring charges."

When asked the exact words used in questioning the defendant, the police officer testified that:

"I don't know if those are the exact words, but basically what happened, you know, what happened, how did your brother get shot, tell us what happened last night, what went down. We got to hear your side of the story."

At subsequent interviews the police told him:

"[T]hat somebody had seen a person matching the description as far as clothing leaving the area with a shotgun. And that his

The defendant refused to make a written statement until he had consulted an attorney. However, he never expressed a desire to abstain from giving an oral statement. The police were satisfied that he understood his rights. He had some familiarity with the criminal justice system having been convicted of two crimes on earlier occasions. No written waiver of rights forms were executed. Subsequent interview sessions were conducted later that afternoon after the defendant had been transferred from the ICU to a private room, and two days later on July 15, 1982. At each, the defendant made incriminating statements including admissions that he was present at the Convenient Food Mart and that he fired guns.

The defendant's counsel filed a motion to suppress the introduction of the oral statements by the defendant. The motion was overruled and the case went to trial before a jury. Although the indictments charged aggravated murder with a specification and attempted murder, the trial court submitted the case on charges of murder and attempted murder. A guilty verdict was returned on each count.

## II
### Assignment of Error No. I

"The trial court erred in failing to grant the appellant's pretrial motion to suppress oral statements made by the appellant during custodial interrogation by police officers in violation of the appellant's Fifth and Fourteenth Amendment rights."

The issue of voluntariness implicates an inquiry whether in light of the totality of the circumstances, the police improperly induced incriminating statements through coercion. *Haynes* v. *Washington* (1963), 373 U.S. 503, 513-514; *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 40-41 [3

---

clothing matched the description of this witness who had seen this happening, and it wasn't only one witness."

O.O.3d 18]. The trial court found the allegations made in the suppression hearing that defendant was prohibited from telephoning his mother or having an attorney unless he "cooperated," were not credible. Even if the defendant's version is accepted as true, the facts fall far short even of those circumstances condoned in *Edwards,* at 37-38. A review of the record here demonstrates that the defendant's statements were in fact voluntary. The voluntariness argument lacks merit.

However, the state's evidence indicated, without rebuttal, that what defendant did, was to invoke the right to refuse a *written statement* in the absence of a lawyer. This conditional demand never became operational because no written statement was ever made. However, one question of consequence still remains. After the *Miranda* warnings, did the defendant act to invoke his right to counsel with sufficient clarity, specificity and force to warrant the termination of the interrogation until a lawyer was provided? If he did, the elicited oral statements should be suppressed. They should not because he did not.

Assignment of Error No. I lacks merit.

## III
### Assignment of Error No. II

"The trial court erred in instructing the jury, thereby depriving the appellant of a fair trial and due process of law."

Following the instructions the trial court asked whether there were objections from counsel. Defense counsel raised two specific issues at that time. On appeal a third alleged error is claimed. However, that third error is waived. For Crim. R. 30 requires timely objection to jury instructions. *State* v. *Faulkner* (1978), 56 Ohio St. 2d 42, 47 [10 O.O.3d 82].

The two objections preserved by the defendant concern the court's instruction on what the defendant needed to establish

to make out a defense of either self-defense or defense of another (his brother). The court first stated the elements of the defense. It set out several conceivable explanations of the events of July 12, 1982, and indicated how the law should be applied to each possibility, including the defense of another.

As a general rule jury instructions are reviewed in their entirety to determine if they contain prejudicial error, *State* v. *Porter* (1968), 14 Ohio St. 2d 10, 13 [43 O.O.2d 5]. If, while instructing the jury, the court summarizes the evidence, error is committed if the summary intimates to the jury what the court's opinion is regarding the facts, *State* v. *Nutter* (1970), 22 Ohio St. 2d 116, 119 [51 O.O.2d 178], or if the summary gives undue prominence to certain portions of the testimony, *Morgan* v. *State* (1891), 48 Ohio St. 371, 377-378. It is not *ipso facto* error in this state for the trial judge to summarize the evidence, providing he presents evidence adduced by both sides and does it fairly, *id.; State* v. *Barger* (1924), 111 Ohio St. 448, 471.

In stating the elements, the court correctly instructed the jury, cf. *State* v. *Robbins* (1979), 58 Ohio St. 2d 74, 80 [12 O.O.3d 84]; *State* v. *Wenger* (1979), 58 Ohio St. 2d 336, 338-341 [12 O.O.3d 309]. In enunciating hypothetical situations, the court fairly presented both the state's and defendant's positions on what the evidence showed. Considering the instructions in their entirety, despite the defense emphasis on the point, it was not prejudicial error for the court to state that Anthony "lowered his gun" after confronting Lewis and Drake, rather than to say that Anthony "put his gun down."

Assignment of Error No. II lacks merit.

## IV

The judgment is affirmed.

*Judgment affirmed.*

PARRINO and VICTOR, JJ., concur.

VICTOR, J., retired, of the Ninth Appellate District, sitting by assignment in the Eighth Appellate District.