[Cite as *State v. White*, 2011-Ohio-5835.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96355**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DEMETRIUS WHITE**

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART**
**AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-539440

**BEFORE:** Jones, J., Kilbane, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** November 10, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY: Erika B. Cunliffe
Assistant County Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Brian D. Kraft
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Demetrius White, appeals his conviction, which was rendered after a jury trial. We affirm in part, reverse in part, and remand for resentencing.

## I. Procedural History and Facts

{¶ 2} White was indicted in July 2010 on the following charges: Count 1,

aggravated burglary; Count 2, domestic violence (victim Latoya Gates); Count 3, assault (victim Shatima Moore); Count 4, robbery (victim Shatima Moore); Count 5, robbery (victim Latoya Gates); Count 6, theft (victim Shatima Moore); Count 7, theft (victim Latoya Gates); and Counts 8 and 9, intimidation of crime victim or witness.

{¶ 3} Prior to trial, the state dismissed Counts 8 and 9, intimidation of crime victim or witness. A jury trial on the remaining counts commenced on October 25, 2010. Voir dire was completed, preliminary instructions were given to the jury, and then the court recessed for the day, instructing the parties and jury that the case would continue the following day. White failed, however, to return for trial the following day, his whereabouts were unknown, and efforts to locate him were unavailing. The trial proceeded in his absence.

{¶ 4} There were two victims in this case, Latoya Gates and Shatima Moore. Gates and Moore were friends, and at the time of the incident Gates and her two children were living with Moore. White is the father of Gates's children. White and Gates communicated only as was necessary for the care of their children.

{¶ 5} The incident occurred on July 4, 2010. According to Gates, she had to be to work at 7:00 a.m. that day, so she asked White to get the children from Moore's house because her usual daycare provider was not available due to the holiday. White arrived sometime in the 5:00 a.m. hour and Gates let him into the house. Gates and her children were sleeping in the living room, while the other occupants of the house — Moore, Moore's boyfriend, Moore's children, and Moore's brother — were sleeping upstairs.

Gates testified that she did not expect White to come so early, so she needed a few minutes to get the children ready.

{¶ 6} According to Gates, while she was attempting to get the children ready, Moore's brother came downstairs and into the living room. This upset White, who believed that Gates was involved in a relationship with the brother with his children around. The brother and White had words and when Gates attempted to intervene, White pushed Gates, who, in attempting to break her fall, caused a "commotion."

{¶ 7} The noise awakened Moore and she came downstairs. Moore testified that she told White he did not have permission to be in her house and ordered him to leave. White angrily told Moore that he was not leaving. Moore called the police. Moore and Gates's testimony as to when the police were called differed. Moore testified that after the defendant told her he was not leaving she got her cell phone to call the police while White was still in the house. At trial, Moore listened to a tape of the 911 call and testified that a voice heard in the background was White's voice. According to Gates, however, White left the house before Moore called the police.

{¶ 8} The police arrived, listened to Gates and Moore's accounts of what had happened, and left. Moore testified that at that time she had the front door open, but the screen door locked. Both women testified that shortly after the police left, White returned and re-entered the house. Moore described that he "barged through" the screen door. Both women testified that White was angry and yelling at Moore about her having called the police. Moore had her cell phone in hand and White grabbed her hand and

retrieved it from her. Moore testified that White twisted her wrists in the process and hurt her.

{¶ 9} Gates intervened. White took Gates's cell phone too, and repeatedly punched her head and face, causing her to bleed. Moore testified that she did not have a land line, and because White had both hers and Gates's cell phones, she ran to a neighbor's house and called the police. While at the neighbor's house, Moore saw White jump over the side of her porch and run through her backyard.

{¶ 10} The police returned and after getting the women's accounts of the incident left in search of White. White was apprehended a few hours later. In a statement to the police, White admitted to being at Moore's house to get his children and to having a verbal disagreement with Gates, but denied that his interaction with anyone in the house was physical.

{¶ 11} Upon that evidence, the jury returned the following verdict: guilty of criminal trespass under Count 1; guilty of domestic violence under Count 2; guilty of assault under Count 3; guilty of robbery under Count 4; not guilty of robbery under Count 5; guilty of theft under Count 6; and not guilty of theft under Count 7. White was sentenced to a two-year prison term, which consisted of two years on the robbery count to run concurrently with six months on the remaining counts.

{¶ 12} White raises the following assignments of error for our review:

"I. The trial court violated Mr. White's Sixth Amendment rights to a fair trial by a fair and impartial jury and to the presumption of innocence by improperly giving the jury a 'flight' instruction.

"II.   The jury's improper exposure to prejudicial information violated Demetrius White's rights to due process and a fair trial.

"III.   The trial court erred at sentencing by failing to merge the theft count with the robbery count and by imposing concurrent sentences on both."

## II.   Law and Analysis

### A.   Flight Instruction

{¶ 13} At trial, over the defense's objection, the court gave the jury a flight instruction.   White's first assignment of error challenges that instruction.

{¶ 14} We review a trial court's issuance of a jury instruction for an abuse of discretion.   *State v. Williams*, Cuyahoga App. No. 90845, 2009-Ohio-2026, ¶50. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error.   *State v. Fields* (1984), 13 Ohio App.3d 433, 436, 469 N.E.2d 939.   Flight from justice may be indicative of a consciousness of guilt. *State v. Taylor*, 78 Ohio St.3d 15, 27, 1997-Ohio-243, 676 N.E.2d 82.   However, "a mere departure from the scene of the crime is not to be confused with a deliberate flight from the area in which the suspect is normally to be found." *State v. Norwood* (Sept. 30, 1997), Lake App. Nos. 96-L-089 and 96-L-090.

{¶ 15} White argues that the instruction was improper because it was not supported by the evidence.   We disagree.   In regard to the first time White came to the house, although Gates testified that he left prior to Moore calling the police, Moore testified that after White refused to leave, she called the police while he was still in the house.   In

fact, Moore testified that White's voice can be heard on the tape of the first 911 call. That evidence was sufficient evidence that White fled the scene knowing that the police were coming.

{¶ 16} Moreover, in regard to the second time White came to the house, both women testified that White angrily entered the house, yelling about Moore having called the police. White then proceeded to take both women's cell phones and after Moore left the house to call the police from a neighbor's house, she saw White jump over the side of her porch and run through her backyard.

{¶ 17} On this record, there was sufficient evidence to support the state's theory that White fled from the scene of the crime and the flight instruction, therefore, was not an abuse of discretion. The first assignment of error is overruled.

B. Motion for Mistrial

{¶ 18} In his second assigned error, White contends that "extrajudicial information" violated his due process and fair trial rights. The testimony White complains of was elicited upon direct examination by the state of a police officer. The officer testified that a firearm was recovered during the search of White's van after his arrest. The defense objected and requested a mistrial. The assistant prosecuting attorney stated that the officer had been instructed prior to his testimony to not reference the discovery of the firearm. The trial court denied the defense's mistrial motion, but instructed the jury not to consider the offending testimony.

{¶ 19} The standard of review for evaluating the trial court's decision on a motion

for a mistrial is an abuse of discretion. *Cleveland v. Gonzalez*, Cuyahoga App. No. 85070, 2005-Ohio-4413, ¶44, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343.

{¶ 20} A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490. The granting of a mistrial is only necessary when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing *Illinois v. Somerville* (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused or the prosecution are adversely or materially affected. *State v. Goerndt*, Cuyahoga App. No. 88892, 2007-Ohio-4067, ¶21.

{¶ 21} The challenged testimony was as follows:

"Q. And did you or were you responsible for the transport of the suspect back to CPU, if you recall?

"A. I don't really remember if we took him or if another car took him. I think we took — we found the firearm. We took that back to the district."

{¶ 22} Upon review, the trial court did not abuse its discretion by denying the defense's motion for mistrial based on the above-cited testimony. The singular reference to the firearm did not compromise White's substantial rights, especially in light of the fact that the trial court gave a curative instructive to the jury. Jurors are presumed

to understand and follow the instructions of the court. *State v. Lessin*, 67 Ohio St.3d 487, 493, 1993-Ohio-52, 620 N.E.2d 72.

{¶ 23} The second assignment of error is overruled.

C. Merger

{¶ 24} In his final assignment of error, White contends that his convictions of robbery in Count 4 and theft in Count 6 should have merged. The state agrees, and we do as well.

{¶ 25} The Ohio Supreme Court's most recent pronouncement on allied offenses is found in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, wherein the Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id. at the syllabus.

{¶ 26} White was found guilty of robbery under R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" White was also found guilty of theft under R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]"

{¶ 27} White committed the theft and robbery offenses against Moore at the same time and with the same conduct. In other words, in terms of the theft and robbery

committed against Moore, White engaged in a single act with a single state of mind. On this record, therefore, the robbery and theft convictions should have merged.

**{¶ 28}** Accordingly, the third assignment of error is sustained and the judgment is reversed on this assignment of error and remanded for resentencing.

### III. Conclusion

**{¶ 29}** The trial court did not abuse its discretion by instructing the jury on flight or by denying White's motion for a mistrial. The court did err by not merging the charges of robbery under Count 4 and theft under Count 6.

**{¶ 30}** Accordingly, the judgment is affirmed in part, reversed in part, and remanded for resentencing.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, JUDGE

MARY EILEEN KILBANE, A.J., and

PATRICIA A. BLACKMON, J., CONCUR