[Cite as *State v. Pagan*, 2012-Ohio-2197.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97268**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOSE PAGAN

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART; REVERSED IN PART

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546295

**BEFORE:** Jones, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 17, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Andrew J. Santoli
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Jose Pagan, appeals his convictions for obstructing justice, tampering with evidence, and carrying a concealed weapon. We affirm in part and reverse in part.

{¶2} In 2011, Pagan was charged with two counts of kidnapping and one count each of aggravated robbery, obstructing justice, and tampering with evidence; these counts contained one- and three-year firearm specifications. He was also charged with one misdemeanor count of carrying a concealed weapon. He was charged along with codefendant Jorge Caraballo.

{¶3} The matter proceeded to a jury trial, at which the following evidence pertinent to Pagan's convictions was presented.

{¶4} On January 12, 2011, Megan Leniz was at Bonkers Bar, a bar she frequented in the area of West 94th Street and Denison Avenue in Cleveland. Leniz was at the bar with her friend Kristina Chorba and Kristina's brother, Brandon Catania. Dawn Coleman was tending bar that evening. Around closing time, Leniz saw a man with a white hat, later identified as Pagan, hand something to a man in a black "hoodie," who was later identified as Caraballo. Pagan left the bar. A moment later, Leniz saw Caraballo wave a gun in the air and tell everyone to empty their pockets. Caraballo went behind the bar, stuck the gun in the bartender's face and told her to give him all of the money; he then began to grab the money she was taking out of the cash register.

{¶5} Chorba testified she saw Caraballo stick the gun in Coleman's throat, but her

brother was able to wrestle Caraballo and obtain control over the gun. Chorba called the police.

{¶6} During the struggle, the clip fell out of the gun. Coleman testified she grabbed the clip and began to hit Caraballo with it. Leniz, who had taken the gun from Caraballo, handed it to her friend, Jose Alvarez. Alvarez testified that he recognized Pagan from earlier in the day, when both had been drinking at a local body shop. He further testified that it was he who took the gun from Caraballo. According to Alvarez, after he took the gun, he went into the bathroom to wash his hands, which had blood on them. When he came out of the bathroom, holding the gun, he saw Pagan, who had returned to the bar. Pagan demanded his gun, asked where his clip was, and took the gun from Alvarez. Alvarez then saw Pagan drive off in a red car; he copied down the license plate number and gave it to police.

{¶7} The bar patrons held Caraballo until the police came. Ashley Bartlett, the bar's owner, arrived at the bar after receiving a call about the robbery. Bartlett showed the officers the surveillance video from the bar's security cameras but was unable to download the video. A detective used his camera to record the video as it played on the bar's monitors.

{¶8} Caraballo, who had pleaded no contest to the indictment and agreed to testify against Pagan, testified that he met up with Pagan earlier in the day at a local body shop. The two men were drinking beer; Caraballo testified he had been drinking since the morning. Caraballo and Pagan left the body shop and Pagan drove them to Bonkers Bar.

Caraballo estimated he had 20 or more drinks throughout the day. According to Caraballo, the last thing he remembered was drinking shots of alcohol in the bar and then waking up in the hospital. He further testified he did not remember ever having a gun or using it to rob the bar.

{¶9} Detective James Kooser of the Cleveland Police Department testified that he received two weapons in connection with the case and both weapons were operable. He further testified that the clip that was recovered from the bar matched a gun recovered from Pagan's car.

{¶10} Detective Michael Torok testified that he took a written statement from Pagan in which Pagan stated that Caraballo alone had committed the robbery. According to Pagan's statement, after the robbery, Pagan told Alvarez that he wanted his gun back and Alvarez went to his car to retrieve the gun and gave it to Pagan. Pagan placed the gun under the seat of his car and it was discovered when he was stopped and arrested by police.

{¶11} At trial, Pagan testified that on the day of the robbery he was drinking with some friends at an auto body shop. He drove Caraballo to the bar, but denied being involved in the robbery. After Caraballo pulled out a gun, Pagan left and drove around "a little," before returning to the bar. When he returned he saw Caraballo being beat up by some women in the bar; Pagan asked the women to stop hitting Caraballo. Pagan denied asking for or taking the gun from Alvarez. Pagan testified he drove home to go to bed but got a call from Alvarez to meet him at a nearby restaurant for breakfast.

While at the restaurant, Alvarez gave Pagan the gun Caraballo had used in the robbery, without the clip. Pagan testified that it was then that he put the gun on the floor in his car. He denied ever telling the detective that he wanted to sell the gun.

{¶12} After leaving the restaurant, Pagan was pulled over by police. Pagan identified himself in the surveillance video and admitted that the police recovered the gun used in the robbery in his car, but denied the gun was his. Pagan did admit, however, that another loaded gun recovered from the car by police was his. On cross-examination, Pagan accused the state's witnesses and the Cleveland Police Department of conspiring against him.

{¶13} The jury convicted Pagan of obstructing justice and tampering with evidence with the attendant three-year firearm specifications, and carrying a concealed weapon. The trial court sentenced him to a total of 13 years in prison as follows: five years for obstructing justice to run consecutive to five years for tampering with evidence plus three years for the firearm specifications; concurrent with one month for carrying a concealed weapon.

{¶14} Pagan now appeals, raising the following assignments of error, some of which will be combined for our review:

I. The state failed to present sufficient evidence to sustain a conviction against appellant.

II. Appellant's convictions are against the manifest weight of the evidence.

III. The trial court committed reversible error when it failed to give the jury the accomplice testimony instruction.

IV.   Appellant was denied effective assistance of trial counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution.

V.   Appellant was denied his right to a fair trial when the trial court allowed the prosecutor to introduce evidence of appellant's statement to police although it was not provided in discovery.

VI.   The trial court erred by ordering convictions and a consecutive sentence for the counts of obstructing justice and tampering with evidence because the offenses are allied offenses.

VII.   The trial court erred in violation of appellant's statutory and constitutional rights by imposing a harsher sentence for appellant who exercised his right to a jury trial compared with his co-defendant who entered a plea.

<u>Sufficiency and Manifest Weight of the Evidence</u>

{¶15} In the first and second assignments of error, Pagan claims that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶16} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.   *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15.   Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.   *Id.*   We find the manifest weight of the evidence

argument dispositive here.

{¶17} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*

{¶18} When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19} Pagan argues that he should have been acquitted of all the charges because the police had no evidence that he was involved in the robbery. We disagree.

{¶20} Leniz testified that she saw Pagan give Caraballo "something" right before Caraballo waved the gun at the bar patrons. Alvarez testified that after he took the gun from Caraballo, Pagan returned to the bar demanding his gun and taking it from Alvarez. Pagan then fled from the bar.

{¶21} The police pulled Pagan over later that night and found two operable guns in his car, including the one that had been used in the robbery. Although Pagan testified that he did not have possession of the gun until he was at the restaurant and Alvarez gave it to him, it was within the province of the jury to determine whom to believe. Moreover, the jury acquitted Pagan of the more serious charges, aggravated robbery and kidnapping; therefore, the jury must have found that Pagan was only involved in the disposal of the gun used in the robbery.

{¶22} Based on these facts, we find that Pagan's convictions were not against the manifest weight of the evidence; therefore, they also were supported by sufficient evidence.

{¶23} Thus, the first and second assignments of error are overruled.

Jury Instructions

{¶24} In the third assignment of error, Pagan argues that the trial court erred by failing to instruct the jury about accomplice testimony. Because his counsel neither requested an accomplice instruction nor objected to the omission of the jury instruction, we review this claim solely for plain error. While Crim.R. 52(B) permits a court to notice plain errors or defects that affect substantial rights although they have not been brought to the attention of the court, a reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at the syllabus. Plain error does not

exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. *State v. Moreland*, 50 Ohio St.3d 58, 552 N.E.2d 894 (1990).

**{¶25}** We review a trial court's decision on jury instructions for an abuse of discretion. *State v. Williams*, 8th Dist. No. 90845, 2009-Ohio-2026, ¶ 50. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist. 1984).

**{¶26}** Trial courts are required to give a special jury instruction in situations where there is some evidence of complicity and an accomplice testifies against the defendant. *State v. Jones*, 8th Dist. No. 88203, 2007-Ohio-1717, ¶ 30, citing *State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268 (1980).

**{¶27}** In this case, Pagan argues the trial court should have charged the jury regarding the credibility of an accomplice in compliance with R.C. 2923.03(D), as follows:

> The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
>
> It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

**{¶28}** This court has previously found that the failure to give the cautionary instruction can amount to plain error because the accomplice instruction is required to be given by law. *State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158

(8th Dist.); *Jones*; *State v. Pope*, 8th Dist. No. 81321, 2003-Ohio-3647.

**{¶29}** The difference in this case, however, is that Pagan was acquitted of the charges on which he was alleged to be an accomplice: kidnapping and aggravated robbery. Thus, Pagan's argument can only relate to the charges on which he was convicted: obstructing justice, carrying a concealed weapon, and tampering with evidence. As to those charges, Pagan was the only person charged and the evidence at trial as to those charges was solely about Pagan's actions. In other words, there was no evidence presented that Pagan aided or abetted Caraballo in committing the offenses for which Pagan was convicted. Based on these particular facts, we find that any error the trial court committed in failing to give the instruction was harmless.

**{¶30}** The third assignment of error is overruled.

Ineffective Assistance of Trial Counsel

**{¶31}** In the fourth assignment of error, Pagan claims he was afforded ineffective assistance of trial counsel.

**{¶32}** In order to establish a claim of ineffective assistance of counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

**{¶33}** Pagan bases his claim entirely on the argument that his counsel was ineffective for failing to request the accomplice instruction. We do not find that his

counsel was ineffective. The accomplice instruction is mandated and R.C. 2923.03(D) places the onus on the trial court to provide the instruction. Therefore, we would hesitate to find a defense attorney ineffective solely because he or she did not ask for an accomplice instruction. Although it is good practice for an attorney to request instructions as they relate to his or her client, a reviewing court would be hard pressed to find counsel's performance deficient so as to meet the *Strickland* test based solely on such an omission. Moreover, we found that any error in the omission of the jury instruction was harmless in the third assignment of error; based on this finding, Pagan was not denied the effective assistance of counsel.

{¶34} Accordingly, the fourth assignment of error is overruled.

## Discovery

{¶35} In the fifth assignment of error, Pagan argues that the trial court erred by allowing his written statement to police into evidence because the state failed to provide the statement to Pagan during discovery.

{¶36} Crim.R. 16(B)(1) requires that "[a]ny written or recorded statement by the defendant or a co-defendant, including police summaries of such statements," shall be disclosed. It is not the state's role to determine whether the statement is material to the case or not. *State v. Moore*, 40 Ohio St.3d 63, 68, 531 N.E.2d 691 (1988). Furthermore, knowledge on the part of a law enforcement officer is imputed to the prosecution. *State v. Wiles*, 59 Ohio St.3d 71, 78, 571 N.E.2d 97 (1991). Strong enforcement of the rule is required because the purpose of the rule is to remove the

element of gamesmanship from the trial. *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 435-436, 639 N.E.2d 83 (1994), and *State v. Parker*, 53 Ohio St.3d 82, 86, 558 N.E.2d 1164 (1990).

**{¶37}** If a discovery violation occurs, the trial court must determine the circumstances surrounding the violation in order to determine an appropriate sanction. *State v. Wharton*, 4th Dist. No. 09CA3132, 2010-Ohio-4775, ¶ 21 (citations omitted). Ultimately, pursuant to Crim.R. 16(E)(3), the trial court has the discretion to determine the appropriate sanction. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983).

**{¶38}** Relevant considerations for the court include whether:

(1) the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) the accused was prejudiced by admission of the statement.

*Id.* at syllabus. While the trial court has the discretion to grant or deny a motion for a mistrial, the court should not order a mistrial unless the substantial rights of the defendant are adversely affected. *Wharton* at ¶ 25. An "'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶39}** Here, it appears the state inadvertently failed to turn over Pagan's written statement to defense counsel. Although the police report mentioned the written statement, the electronic discovery package the state sent to Pagan's attorney did not include the statement. Once this was brought to defense counsel's attention, the state

immediately gave the statement to defense counsel, but counsel requested a mistrial. The trial court noted its concern that defense counsel did not have the written statement and continued the trial to the next day. The following morning the trial court decided to continue the trial an additional four days, which included the weekend. It appears as though the court's continuance was two-fold: for Pagan to address any issues with the statement and to try and locate an additional witness he wanted to testify on his behalf.

{¶40} Although the state's failure to give defense counsel a copy of his client's written statement was in clear violation of Crim.R. 16, the trial court rectified the violation. Pagan has not claimed that he was unable to present evidence because of the violation. It was within the trial court's discretion to determine how to deal with the violation and, based on these facts, we do not find that the trial court abused its discretion in granting a mid-trial continuance instead of a mistrial.

{¶41} The fifth assignment of error is overruled.

### Sentencing

{¶42} In the sixth and seventh assignments of error, Pagan claims that he was improperly sentenced.

{¶43} First, Pagan claims that tampering with evidence and obstructing justice are allied offenses of similar import. Pagan was convicted of obstructing justice, in violation of R.C. 2921.32(A)(4), which provides:

(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, * * * shall do any of the following:

* * *

(4) Destroy or conceal physical evidence of the crime or act, or induce any person to withhold testimony or information or to elude legal process summoning the person to testify or supply evidence.

**{¶44}** Pagan was also convicted of tampering with evidence, in violation of R.C. 2921.12(A), which provides:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or

thing, with purpose to impair its value or availability as evidence in

such proceeding or investigation.

**{¶45}** R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶46}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court held that a trial court must consider the defendant's conduct to determine whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

*Id.* at ¶ 49-50, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50.

**{¶47}** Here, the trial court found that the two offenses were not allied because

there were two acts * * * the first act would have been taking the gun from the scene. The second act would have been hiding the gun under the seat. They were not done at the same time. They were not simultaneous. They were not the same acts.

**{¶48}** We disagree. Whether the jury believed that Pagan took the gun from Alvarez at the bar shortly after the robbery or took it later that night at the restaurant, we find that his actions constituted a single course of action of taking the gun and then hiding the gun in his car.

**{¶49}** The determination of the defendant's guilt for committing allied offenses remains intact, however, both before and after the merger of allied offenses for sentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 27. Upon resentencing, the state must elect which allied offense it will pursue against the defendant. *Id.* at ¶ 25.

**{¶50}** Next, Pagan argues that the trial court erred in sentencing him to 13 years in prison, which was more than the 6-year sentence Caraballo received. This argument is essentially an argument that the trial court abused its discretion in fashioning his sentence. But because we find that the tampering with evidence and obstructing justice

convictions are allied and must be remanded for resentencing, it is premature for this court to opine whether the trial court abused its discretion in sentencing him to 13 years in prison. *State v. Phillips*, 8th Dist. No. 96329, 2012-Ohio-473, ¶ 62.

**{¶51}** The sixth assignment of error is sustained; the seventh assignment of error is overruled as not ripe for consideration.

**{¶52}** Accordingly, Pagan's convictions are affirmed in part and reversed in part. This case is remanded for the state to elect which count to pursue and for appropriate resentencing.

It is ordered that appellant recover of appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR