[Cite as *State v. Hill*, 2013-Ohio-3245.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99186**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## OLETHUS HILL, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-562668

**BEFORE:**  Kilbane, J., Jones, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**  July 25, 2013

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Nicole Ellis
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Olethus Hill, Jr., appeals from his convictions for burglary and kidnapping. For the reasons set forth below, we affirm.

{¶2} On June 5, 2012, defendant was indicted pursuant to an 11-count indictment in connection with a home invasion on August 23, 2011. In Count 1, defendant was charged with aggravated burglary. Counts 2 and 6 charged him with kidnapping Jane Doe and John Doe. Counts 3, 4, 7, and 8 charged him with felonious assault. Counts 5 and 9 charged him with aggravated robbery. Count 10 charged him with kidnapping Jane Doe and set forth a sexual motivation specification. Count 11 charged him with rape. Each of these counts set forth one- and three-year firearm specifications. Defendant pled not guilty, and the matter proceeded to a jury trial on September 10, 2012.

{¶3} The state's evidence indicated that on August 22, 2011, Brittany Giboney ("Brittany"), Brittany's sister Brooke Giboney ("Brooke"), and their friend Amber Branham ("Amber") were at work. Brittany and Brooke's brother, 16-year-old C.G., were watching Brooke's child and Amber's child at their home at 4380 East 146th Street in Cleveland. The women returned home at around 11:00 p.m. Brittany went to sleep at midnight. C.G. decided to stay with his sisters and went to sleep in Brittany's room at around 1:00 a.m.

{¶4} Brittany testified that she was awakened by the sound of something being moved or things falling, then heard the bedroom door open. Someone turned on the

lights, and as Brittany attempted to sit up, someone pushed her head back down, put a pillow over her head, and ordered her to lie back down. She lifted her head, and someone struck her in the head with a gun. Brittany testified that she could hear at least four intruders inside the house. One of them seemed to be trying to disguise his voice.

{¶5} These individuals tied her hands behind her back with a cord from a video game, and they also tied C.G.'s hands behind his back using tape. They repeatedly struck C.G. in the head, causing him to sustain a large gash, and then smashed him with eggs. They also struck Brittany in the head with the gun and held the gun to her head while they demanded money and jewelry. Brittany told them that she had $200 in her purse, which they took. One of the intruders, who was dark-skinned and had dread locks, inserted the gun into her vagina and threatened to shoot her if she did not give him money. Brittany acknowledged that defendant is not dark-skinned and does not have dread locks.

{¶6} Brittany further testified that the intruders were inside the home for approximately 45 minutes, and they took everything of value, including cell phones, televisions, stereos, and speakers. They demanded the key to a storage closet, but Brittany did not have it.

{¶7} Brittany further testified that the intruders fled when they heard a loud noise in the house. After they left, Brittany and C.G. remained still for several minutes to be certain that they were gone. They then freed themselves and awoke Brooke and Amber. Amber called the police, and Brittany and C.G. were transported to the hospital.

{¶8} Brittany testified that on October 12, 2011, the police presented her with a photo array. She did not identify the defendant as one of the assailants, but she recognized him from her neighborhood. Brittany stated that he has never been a guest in her home, and that only friends and family had been inside her home.

{¶9} C.G. testified that he had locked up the house when he put the children to bed, but he did not recheck the doors after the women returned from work. He testified that there were at least four assailants. He believed that they entered by breaking the kitchen window. The assailants were dressed in black and their faces were covered, but he did not believe that they were wearing gloves. He stated that he was repeatedly struck with the gun, and that he could hear Brittany crying while she was being attacked. He stated that the assailants repeatedly threatened him and also threatened to wake up the children sleeping in the other room if C.G. and Brittany did not give them money. C.G. testified that he does not know the defendant and has never seen him prior to trial.

{¶10} Amber and Brooke testified that the house was ransacked. A large screen television that Amber had recently purchased was missing, as were video game systems, phones, jewelry, and a laptop. The kitchen window was broken, the back door was propped open, and their dog was missing. These witnesses also established that two days before the incident, they had just cleaned their house and dusted everything. Cleveland police officers responded to the scene. Neither witness knows the defendant, nor have they ever invited him into their home.

{¶11} Detective Michael Belle photographed the house and recovered six latent fingerprints. The police also examined masking tape found at the scene; however, it had an insufficient amount of DNA to conduct an analysis.

{¶12} Following voir dire, certified latent print examiner Felicia Simington ("Simington") was recognized as an expert witness by the trial court. Simington testified that the fingerprints recovered herein were of good quality and were entered into the Automated Fingerprint Identification System ("AFIS"). Four of the latent prints that were taken from the television stand, which included two palm prints and two fingerprints, matched defendant's known fingerprints. The match was confirmed by another certified fingerprint examiner. According to Simington, one latent print had 15 points of identification with defendant's known left index finger. Another latent print had 25 points of identification with defendant's left palm print. Other latent prints matched defendant's known left middle finger and his left index finger. Prior to trial, defendant was re-fingerprinted to verify that the fingerprints that Simington considered as defendant's known prints were his actual fingerprints.

{¶13} Cleveland Police Detective Jack Lent ("Detective Lent") testified that he took statements from Brittany and C.G. After the fingerprint match was established, Detective Lent prepared a six-person photo array for Brittany. She recognized defendant's photograph as someone from her neighborhood. Detective Lent obtained an arrest warrant for defendant, but he was unable to locate him. Detective Lent also decided against seeking a search warrant for defendant's premises because too much time had

passed before the officers could determine defendant's address. Detective Lent obtained defendant's cell phone number, but phone records and tower information that would have pinpointed defendant's whereabouts were no longer available. Detective Lent admitted on cross-examination that some of the details that the victims initially provided to police were later determined to be incorrect, including claims that the assailants gagged Brittany and C.G.

{¶14} On May 30, 2012, Lakewood Police Officer Anthony Ceresi ("Officer Ceresi") stopped defendant's vehicle because the license plate light was out. Officer Ceresi then arrested him on the outstanding arrest warrant issued in Cleveland.

{¶15} Following the presentation of the state's case, defendant moved for a judgment of acquittal. The trial court permitted the state to amend the felonious assault charges in Count 3 and Count 8 to misdemeanor assault. The court then denied the Crim.R. 29 motion in its entirety.

{¶16} Defendant was convicted of burglary, a lesser included offense of aggravated burglary, as alleged in Count 1, and the three-year firearm specifications for this offense; guilty of kidnapping as alleged in Counts 2 and 6 of the indictment, and the three-year firearm specifications for these offenses; guilty of misdemeanor assault as alleged in amended Counts 3 and 8; not guilty of felonious assault as alleged in Counts 4 and 7; guilty of aggravated robbery as alleged in Counts 5 and 9 as well as the three-year firearm specifications for these offenses; and not guilty of kidnapping and rape as alleged in Counts 10 and 11 of the indictment.

{¶17} The matter proceeded to sentencing on October 22, 2012. The trial court determined that the convictions in Counts 3 and 5 merged into the kidnapping conviction in Count 2, and that the convictions in Counts 8 and 9 merged with the kidnapping conviction in Count 6. The court also merged all of the convictions for the three-year firearm specifications. The state elected to proceed on Counts 2 and 6. The trial court imposed a total aggregate term of 19 years. The court sentenced defendant to four years of imprisonment for burglary in Count 1, consecutive to six years of imprisonment for kidnapping in Count 2, and consecutive to six years of imprisonment for kidnapping in Count 6, plus three years for the firearm specification. Defendant now appeals and assigns five errors for our review.

Assignment of Error 1

The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against Appellant.

{¶18} Pursuant to Crim.R. 29, the trial court must issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241, ¶ 18, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶19} The role of an appellate court presented with a sufficiency of the evidence is as follows:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶20} Here, defendant was convicted of burglary and kidnapping. The essential elements of burglary are to trespass in a permanent or temporary habitation when another is or is likely to be present. R.C. 2911.12. The essential elements of kidnapping are to "by force, threat, or deception * * * remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony." R.C. 2905.01(A). Pursuant to R.C. 2923.03(A), "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * *[a]id or abet another in committing the offense." A charge of complicity may be stated in terms of the complicity statute, or in terms of the principal offense. R.C. 2923.03(F).

{¶21} The evidence presented by the state indicated that the house had been cleaned several days before the attack, and that none of the occupants of the home knew defendant or ever invited him into their house. The evidence further indicated that at least four intruders, acting in concert, broke into the home while the occupants were asleep, then terrorized Brittany and C.G., and took their valuables. During the home invasion, Brittany and C.G. were bound and restrained in the bedroom. They were

repeatedly struck while others ransacked the house and gathered up the valuables. Latent fingerprints and palm prints were recovered and matched to defendant's known prints. This evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. That is, viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of burglary and kidnapping to be proven beyond a reasonable doubt.

{¶22} Further, although defendant complains that the testimony of the fingerprint examiner stated that some experts have determined that a match is present with as few as two points of identification between a latent print and a known print, this testimony does nothing to undermine the fingerprint analysis herein because Simington testified that her office requires at least 12 points of identification in order to determine that there is a match and each match is then reviewed by another examiner. The state presented sufficient evidence herein, and therefore, the trial court properly denied the Crim.R. 29 motion for acquittal.

{¶23} The first assignment of error is without merit.

Assignment of Error 2

Appellant's convictions are against the manifest weight of the evidence.

{¶24} When reviewing a claim challenging the manifest weight of the evidence, the court, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversal on manifest weight grounds is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.* In addition, this court must remain mindful that the weight to be given the evidence and the credibility of the witnesses are matters left primarily to the jury. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶25} In this matter, we cannot say that the jury lost its way in convicting the defendant of burglary and kidnapping. The state presented detailed, consistent, compelling evidence to establish that at least four individuals broke into the home, restrained Brittany and C.G., and repeatedly struck them while others acting in concert ransacked the house and stole valuables. Defendant did not present evidence herein. He complains, however, that it is not logical that defendant would fail to wear gloves during such a highly planned armed invasion, and that only his prints were recovered. The fingerprint evidence inculpates rather than exculpates defendant herein. Moreover, the jury may have found this evidence credible in light of the extended period of time in which the intruders were inside the home, and the fact that they handled so much of the contents of the home. Defendant also complains that Brittany and C.G. were not credible because the other occupants of the home did not wake up during the attack, but this issue was a matter for the jury's evaluation. The convictions are not against the manifest weight of the evidence.

Assignment of Error 3

The verdicts finding defendant guilty of the three-year firearm specifications were contrary to law because they were inconsistent with the jury's finding that Appellant was not guilty of the one-year firearm specification, thus rendering all of the guilty verdicts invalid.

**{¶26}** As a general principle, we note that the individual counts of an indictment containing more than one count are not interdependent, and an inconsistency in a verdict does not arise out of inconsistent responses to different counts but only arises out of inconsistent responses to the same count. *State v. Lovejoy*, 79 Ohio St.3d 440, 1997-Ohio-371, 683 N.E.2d 1112, paragraph one of the syllabus. Similarly, an acquittal on a one-year firearm specification and a finding of guilt on a three-year firearm specification do not result in an inconsistent verdict requiring the vacation of the three-year specification. *State v. Glenn*, 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, ¶ 69, citing *State v. Hampton*, 1st Dist. Hamilton No. C-010159, 2002-Ohio-1907.

**{¶27}** The third assignment of error is without merit.

Assignment of Error 4

The trial court deprived Appellant of a fair trial by erroneously giving a jury instruction on flight.

**{¶28}** We review a trial court's issuance of a jury instruction for an abuse of discretion. *State v. Williams*, 8th Dist. Cuyahoga No. 90845, 2009-Ohio-2026, ¶ 50. Further, jury instructions are reviewed in their entirety to determine if they contain

prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984.)

{¶29} Flight from justice may be indicative of a consciousness of guilt. *State v. Taylor*, 78 Ohio St.3d 15, 27, 1997-Ohio-243, 676 N.E.2d 82. However, "a mere departure from the scene of the crime is not to be confused with a deliberate flight from the area in which the suspect is normally to be found." *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420 (Sept. 30, 1997).

{¶30} With regard to the form of the instruction, we note that in this matter, the court instructed the jury as follows:

> Consciousness of guilt, flight of the Defendant. Testimony has been admitted indicating that the Defendant fled the scene. You are instructed that the fact that the Defendant fled the scene does not raise a presumption of guilt but it may tend to indicate the Defendant's consciousness of guilt.
>
> If you find the facts do not support the Defendant fled the scene, or if you find that some other motive prompted the Defendant's conduct, or if you are unable to decide what the Defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find the facts support the Defendant engaged in such conduct, and if you find the Defendant was motivated by a consciousness of guilt, you may but are not required to consider that evidence in deciding whether the Defendant is guilty of the crimes charged. Ladies and gentlemen, you alone determine what weight, if any, to give to this evidence.

{¶31} This instruction clearly informed the jury that *"[i]f you find the defendant did flee from the scene of the crime, you may consider this circumstance in your consideration of the guilt or innocence,"* so it did apprise the jury to consider whether there had been more than a mere departure from the scene. (Emphasis added.) The instruction correctly advised the jury not to consider evidence of the defendant's

departure from the scene if they find that it was not motivated by consciousness of guilt. *See State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 42; *State v. Lozada*, 8th Dist. Cuyahoga No. 94902, 2011-Ohio-823, ¶ 26 (no error where the court's oral charge to the jury failed to contain this additional language, but the written charge did contain this language). Moreover, this instruction is similar to the one set forth in 4 *Ohio Jury Instructions*, Section 405.25(1), at 43 (2005) and is similar to the instructions approved in *State v. Taylor*, 78 Ohio St.3d 15, 1997-Ohio-243, 676 N.E.2d 82, and *State v. Hamilton*, 8th Dist. Cuyahoga No. 86520, 2006-Ohio-1949, ¶ 38-39. The form of the instruction was not an abuse of discretion.

{¶32} As to whether the instruction was warranted herein, we note that in *State v. Villa*, 9th Dist. Lorain No. 05CA008773, 2006-Ohio-4529, ¶ 31, the court held that the trial court did not abuse its discretion in giving a flight instruction where the evidence established that defendant departed the scene, was sought for questioning about the crime, and could not be located. Similarly, in this matter, there was evidence that after the police identified defendant as a suspect in this matter, he could not be located. We find no abuse of discretion viewing the record in its entirety.

Assignment of Error 5

> The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

{¶33} In reviewing a felony sentence, we take note of R.C. 2953.08(G)(2), which provides in pertinent part:

The court hearing an appeal * * * shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶34} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) that the sentence is otherwise contrary to law.

{¶35} The trial court has the full discretion to impose any term of imprisonment within the statutory range, but it must consider the sentencing purposes in R.C. 2929.11, the guidelines contained in R.C. 2929.12, and *State v. Stone*, 3d Dist. Marion No. 9-11-39, 2012-Ohio-1895, ¶ 10, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 36-42; *State v. Elston*, 3d Dist. Putnam No. 12-11-11, 2012-Ohio-2842, ¶ 10.

{¶36} Here, the four-year term imposed for burglary, a second-degree felony, is within the statutory range for this offense, which is two to eight years. R.C.

2929.14(A)(2). The six-year terms imposed for kidnapping, a first-degree felony, are also within the statutory range for this offense. R.C. 2929.14(A)(1).

{¶37} In accordance with R.C. 2929.14(C)(4), the trial court is required to engage in a three-step analysis in order to impose consecutive sentences. *State v. Lebron*, 8th Dist. Cuyahoga No. 97773, 2012-Ohio-4156, ¶ 10. Under R.C. 2929.14(C)(4), in imposing consecutive sentences, the trial court must first find the sentence is necessary to protect the public from future crime or to punish the offender. *Id*. Next, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id*.

{¶38} Finally, the trial court must make at least one of the following findings: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id*.; R.C. 2929.14(C)(4)(a)-(c).

{¶39} A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory

criteria.  *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 1999-Ohio-110, 715 N.E.2d 131.

{¶40} In the record of this matter, the trial court acknowledged that defendant had previously committed traffic offenses and that the instant matter was his first felony conviction.  The trial court heard from defendant's family as well as the victims.  Defendant apologized for the offenses but refused to name the other individuals involved in the home invasion.  He stated that he was coerced at gunpoint into participating in the offenses.  The court correctly set forth the statutory criteria to be considered before imposition of sentence.  The court next described the heinousness of the offenses, stating that it involved a violent entry into the home with weapons in the middle of the night and that there were multiple victims, including children.  The court found that the sentence would be commensurate with the seriousness of the offender's conduct and to the danger the offender poses, stating that defendant had caused mental and physical harm to the victims and that this was a "huge factor."  The court also stated that "the harm caused by you in these offenses were so great and unusual that no single prison term for any of the offenses committed as part of any of the course of conduct would adequately reflects the seriousness of the conduct."  In its journal entry, the court stated that it

> considered all required factors of the law.  * * * The court finds that consecutive sentences are necessary to protect the public and punish the offender; are not disproportionate to similar crimes committed by similar [defendants]; that the conduct was so egregious and the psychological impact on the victim was so great that a single term of incarceration would demean the seriousness of the offense.

**{¶41}** The record demonstrates that the trial court correctly set forth the statutory criteria. In addition, the court's remarks demonstrate that it found that the sentence is necessary to protect the public from future crime and to punish the offender. The record also clearly indicates that the trial court found that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The court also found that the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct, as required under R.C. 2929.14(C). The trial court did not err in imposing consecutive sentences herein.

**{¶42}** The assignment of error is without merit.

**{¶43}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR