[Cite as *State v. Walker*, 2014-Ohio-1827.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99998**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAJHON WALKER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART;
REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-567946

**BEFORE:** Kilbane, P.J., Blackmon, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEY FOR APPELLANT**

Leif B. Christman
1370 Ontario Street
Suite 2000
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Kerry A. Sowul
Christopher D. Schroeder
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, DaJhon Walker ("Walker"), appeals from his aggravated murder, murder, felonious assault, and having a weapon while under disability convictions. For the reasons set forth below, we vacate his aggravated murder conviction and sentence, affirm his remaining convictions, and remand for resentencing.

{¶2} In October 2012, Walker and codefendants, Otis Johnson ("Johnson") and Derrell Shabazz ("Shabazz"), were charged in a ten-count indictment.[1] Count 1 charged each of them with the aggravated murder of Antwon Shannon ("Shannon") and carried a one- and three-year firearm specification. Count 2 charged each of them with the murder of Shannon and carried a one- and three-year firearm specification. Counts 3-5 charged each of them with the felonious assault of Shannon, with Counts 3 and 5 carrying a one- and three-year firearm specification. Count 6 charged each of them with the felonious assault of Ivor Anderson ("Anderson"). Counts 7 and 8 charged each of them with the felonious assault of Eunique Worley ("Worley"). Count 9 charged Shabazz with having a weapon while under disability. Count 10 charged Walker with having a weapon while under disability.

{¶3} The matter proceeded to a jury trial on February 13, 2013. Defendants moved for a mistrial the next day. The trial court granted defendants' motion based on

---

[1]Codefendant Shabazz has filed an appeal with this court in *State v. Shabazz*, 8th Dist. Cuyahoga No. 100021.

juror misconduct and rescheduled the trial for May 20, 2013.[2] The following evidence was adduced at trial.

{¶4} In the early morning hours of February 19, 2012, Shannon and Anderson were at the Tavo Martini Loft ("Tavo") in Cleveland, Ohio. The two men met up with Worley and her three friends, Marvella Grant, Ashley Nix, and Asia Rudolph. At approximately 1:30 a.m., an unknown male, later identified as Robert Steele ("Steele"), spilled champagne on Anderson while he and Shannon were on the dance floor.[3] Anderson looked at the man and moved his hands up and down to gesture "in a sense like I don't care." He told the man, "you're doing too much." This was the only verbal exchange between Anderson and Steele.

{¶5} After this incident, Anderson testified that he observed Steele walk over to two men, later identified as Shabazz and Johnson. He felt that they were plotting against him, so he continued to watch them for approximately ten minutes and then went about his business. Anderson told Shannon "to keep an eye out" because the group looked suspect. Anderson then went over to Worley to have a conversation. They spoke for approximately three minutes when Anderson heard someone yell out "yeah, nig***." As he turned around, Steele struck Anderson in the head with a champagne bottle. Both men fell, where they tussled on the ground. Part of the bottle hit Worley in the head and

---

[2]Count 10, the having a weapon while under disability charge, was bifurcated and tried to the bench.

[3]Steele's identity was unknown until the eighth day of trial. Steele pled guilty to one count of felonious assault and was sentenced to two years in prison.

she also fell to the ground. At this point, an altercation ensued among Shannon, Anderson, Walker, Shabazz, Johnson, and other persons in the nightclub. Anderson was tackled by a female while he fought with Steele. Anderson was on the ground again when he heard a gunshot.

{¶6} Tennison Malcolm ("Malcolm"), a medical school student, testified that he was at Tavo with some friends when he heard the gunshot. He then ran into the bathroom. While he was in there, Shannon came into the bathroom looking confused. Malcolm asked him if he was okay and if he was shot. Shannon replied that he did not know. Malcolm asked him to lift up his shirt. Malcolm observed blood coming from Shannon's chest. He put pressure on Shannon's chest and called 911. At one point, Shannon became unresponsive so Malcolm started chest compressions. The ambulance arrived shortly thereafter.

{¶7} Meanwhile, Anderson was still on the ground grabbing the female on top of him. A few minutes later, Johnson picked the female up off Anderson and then he exited the nightclub. Anderson later told police that the gunshot came from the area near the exit door. Upon exiting the building, Anderson waited outside for approximately five minutes looking for Shannon. He did not see Shannon so he went back inside the nightclub. Tavo's security guards escorted him back outside.

{¶8} While he was outside, two women approached him, one of which was the woman who attacked him in the nightclub. To avoid them, he went back into Tavo and checked on Worley. He escorted Worley to her car, and as he walked to his car he

noticed that Shannon's car was still in the parking lot. At that point, he determined that Shannon was the individual who got shot in the nightclub. Anderson then went to the Metro Health Hospital where he learned that Shannon had died.

{¶9} The incident was captured by surveillance video, which the jury was able view. The video shows Walker speaking with Johnson, Shabazz, and Steele after he spilled champagne on Anderson. The video also shows Steele dancing with a bottle in his hand and Johnson walking around with a bottle in his hand. The four men are standing by Anderson and Shannon. Steele strikes Anderson with the object in his hand and the fight begins. Anderson is fighting with Steele and then is tackled by a female who knocks him to the dance floor. Shannon is seen pulling a female back from the fight. Walker is seen punching Shannon and also hitting him with a bottle. The video then shows Walker pull an object out of his waistband and walk behind a pillar that is right next to the dance floor. At the same time, the fight continues on the dance floor and Shannon is trying to break up the fight by removing one of the females off of Anderson. The fight then spills over to the area next to the dance floor and the pillar where Walker walked behind. Shannon is seen bending forward, with his back in the direction of where Walker went behind the pillar. The video then shows two flashes — one small flash in front of Shannon, similar to one that would come from a cell phone camera, and a large flash directly behind Shannon, which was the gunshot. Within less than a second, the video shows particulate matter falling in front of the camera. Walker can then be observed running from behind the other side of the pillar and across the dance

floor toward an exit door. Shabazz was on the dance floor. He met up with Walker and they exited the nightclub together. As Walker was running, the video shows him fumbling with his waistband.

{¶10} At the conclusion of trial, the jury found Walker guilty of aggravated murder (Count 1), murder (Count 2), the felonious assault of Shannon (Counts 3-5), and the felonious assault of Anderson (Count 6). The jury found him not guilty of the felonious assault of Worley (Counts 7-8). The trial court found him guilty of having a weapon while under disability. The trial court sentenced Walker to life in prison, with the possibility of parole after serving 20 years, on the aggravated murder charge. The trial court merged the murder and felonious assault charges (Counts 2-5) with the aggravated murder for purposes of sentencing. The court also merged all the firearm specifications into one three-year specification to be served prior and consecutive to the aggravated murder charge. The trial court sentenced him to two years in prison on the remaining felonious assault charge (Count 6) and nine months in prison on the having a weapon while under disability (Count 10). The court ordered that Counts 1 and 10 be served concurrently and Count 6 be served consecutively to Counts 1 and 10.

{¶11} Walker now appeals, with his appellate counsel raising ten assignments of error for review. Walker filed a pro se supplemental brief in which he raises an additional assignment of error. The assignments of error will be discussed together, where appropriate.

Assignment of Error One

There was insufficient evidence to support a finding of prior calculation and design.

## Assignment of Error Two

There was insufficient evidence that Walker fired the shot.

## Assignment of Error Three

There was insufficient evidence to convict Walker of felonious assault.

## Assignment of Error Four

There was insufficient evidence that Walker possessed a firearm.

## Assignment of Error Five

The verdict finding prior calculation and design was against the manifest weight of the evidence.

## Assignment of Error Six

It was against the manifest weight of the evidence to conclude Walker was the shooter.

## Assignment of Error Seven

The verdict of felonious assault was against the manifest weight of the evidence.

## Assignment of Error Eight

The court finding that Walker possessed a firearm was against the manifest weight of the evidence.

## Assignment of Error Nine

It was prejudicial error to give a jury instruction on complicity based upon the evidence presented.

## Assignment of Error Ten

It was prejudicial error to give jury instruction on flight based upon the evidence presented.

Pro Se Supplemental Assignment of Error One

Did * * * trial counsel prejudice appellant causing [a] guilty outcome verdict[,] due to the ineffective assistance of counsel [by failing] to successfully challenge [the] state['s] expert witness[.]

## Sufficiency of the Evidence

{¶12} In the first, second, third, and fourth assignments of error, Walker challenges the sufficiency of the evidence with respect to his aggravated murder, murder, and felonious assault convictions.

{¶13} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

## Aggravated Murder and Murder

{¶14} In the instant case, Walker was convicted of the aggravated murder of Shannon under R.C. 2903.01(A), which provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another[.]" Walker argues the state failed to prove that the shooting was the result of prior calculation and design. He

maintains that the shooting was a spur-of-the-moment act. He further argues there was no reliable evidence that anyone attempted to purposefully cause Shannon's death.

{¶15} In *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 79, the Ohio Supreme Court noted that there is no bright-line rule to determine whether a defendant acted with prior calculation and design. The *Cassano* court acknowledged that "'prior calculation and design' is a more stringent element than the 'deliberate and premeditated malice' * * * required under prior law." *Id.*, quoting *State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph one of the syllabus. Specifically, prior calculation and design requires "'a scheme designed to implement the calculated decision to kill.'" *State v. D'Ambrosio*, 67 Ohio St.3d 185, 196, 616 N.E.2d 909 (1993), quoting *Cotton* at 11. Walker claims there was insufficient evidence to support a finding of prior calculation and design. We agree.

{¶16} The Ohio Revised Code does not define the phrase "prior calculation and design," but the Ohio Supreme Court has interpreted the phrase to require evidence of "more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." *Cotton* at 11. While "'[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, * * * 'momentary deliberation' is insufficient.'" *D'Ambrosio* at 196, quoting the 1973 Legislative Service Commission Comment to R.C. 2903.01. According to the committee comment, "the phrase 'prior calculation and design' [was employed] to

indicate studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." *See also State v. Taylor*, 78 Ohio St.3d 15, 1997-Ohio-243, 676 N.E.2d 82.

{¶17} The existence of prior calculation and design is determined on a case-by-case analysis of the facts and evidence. *State v. Jones*, 91 Ohio St.3d 335, 345, 2001-Ohio-57, 744 N.E.2d 1163. Although there is no bright-line rule for determining prior calculation and design, the Ohio Supreme Court has found the following factors pertinent to determining the existence of prior calculation and design: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost spontaneous eruption of events'?" *Taylor* at 19, quoting *State v. Jenkins*, 48 Ohio App.2d 99, 255 N.E.2d 825 (8th Dist.1976). "These factors must be considered and weighed together and viewed under the totality of all circumstances of the homicide." *Jenkins* at 102.

{¶18} In the instant case, when considering these factors and the totality of the circumstances, we find that, even construing the evidence in a light most favorable to the state, there is insufficient evidence of prior calculation and design. As to the first factor, there is no evidence in the record that Walker knew Shannon, let alone had a strained relationship with him. With respect to the second factor, the evidence fails to demonstrate that Walker gave thought in choosing the murder site. The state did not have any eyewitness testimony to the shooting, so it relied on the surveillance video to

present its case. The surveillance video shows Anderson and others fighting on the dance floor. Shannon gets caught in the fight while he is trying to break it up. Walker walks behind a pillar, which is next to the dance floor. The video then shows the fight spilling over to the area by the pillar Walker went behind. The fight could have just as easily spilled over into the other direction. Thus, Walker did not choose the murder site or pursue Shannon. Rather, the video shows that the murder site came to him instead.

{¶19} With respect to the third factor, we find that Walker's actions were the result of an almost spontaneous eruption of events. The evidence demonstrates that after the fight erupted, a group of people were tussling on the dance floor. The fight then happens to spill over to the area by the pillar where Walker was observed walking behind. Shannon is seen bent forward and one gunshot is fired at his back. The video fails to demonstrate that "the act was drawn out." Rather, the video shows the entire sequence of events, which happened within minutes, as a chaotic situation that spiraled out of control.

{¶20} The state argues that because Steele spoke with Walker, Shabazz, and Johnson after he spilled champagne on Anderson, there was evidence of prior calculation and design. However, there is no audio of what these males were discussing, let alone audio of a plan to murder Shannon. The fact that Walker was speaking with the group that he came to the nightclub with does not indicate that he planned to kill Shannon. It is not unusual for a group to stand together and converse while at a nightclub.

**{¶21}** Based on the foregoing, we conclude that the evidence is insufficient to demonstrate that Walker planned a scheme to implement a calculated decision to kill. Rather, the evidence demonstrates that the act was the result of the sudden eruption of Anderson's fight. Accordingly, there was insufficient evidence to support Walker's conviction for aggravated murder. There was, however, sufficient evidence that Walker committed murder in violation of R.C. 2903.02, which provides that "[n]o person shall purposefully cause the death of another[.]" An individual acts purposefully when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶22}** Walker argues there is no evidence that he fired the shot or that he had a gun. While there was no eyewitness testimony identifying Walker as the shooter, such evidence is not required in order to sustain a conviction. *State v. Lopez*, 8th Dist. Cuyahoga No. 94312, 2011-Ohio-182, ¶ 62, citing *Jenks*. The surveillance video shows Walker pull an object out of his waistband during the fight and walk behind a pillar that is right next to the dance floor. The fight then spills over to the area next to the pillar where Walker was standing. Shannon is seen bending forward, with his back to where Walker was standing. The video then shows a large flash, which was the gunshot that killed Shannon. Within seconds, Walker is the first person who can be observed running from behind the other side of the pillar and across the dance floor toward an exit door.

As Walker was running, the video shows him fumbling with his waistband. When viewing this evidence in a light most favorable to the state, we find sufficient evidence to support Walker's murder conviction.

{¶23} Accordingly, Walker's aggravated murder conviction is vacated and his murder conviction is affirmed. The first assignment of error is sustained and the second and fourth assignments of error are overruled.

Felonious Assault

{¶24} In the third assignment of error, Walker challenges the sufficiency of his felonious assault convictions. Walker was convicted of four counts of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2). The indictment lists Shannon as the victim in three counts and Anderson as the victim in the remaining count. R.C. 2903.11(A)(1) and (A)(2) provide in pertinent part:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another * * *;

(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.

{¶25} He argues that the convictions were "presumably based on a complicity theory based upon the lack of any actual assault by Walker." However, the surveillance video clearly shows Walker punching Shannon and also hitting him with a bottle before he shot Shannon. The video further shows Anderson getting hit in the head with a bottle by Steele. Steele, Johnson, Shabazz, and Walker all participated in the fight. Under R.C. 2923.03(F), an accomplice to a crime is subject to the same prosecution and

punishment as the principal offender. The trial court, in the instant case, instructed the jury on complicity. Based on the foregoing, when viewing this evidence in a light most favorable to the state, we find sufficient evidence to sustain Walker's felonious assault convictions.

{¶26} Therefore, the third assignment of error is overruled.

<u>Manifest Weight of the Evidence</u>

{¶27} In the fifth, sixth, seventh, and eighth assignments of error, Walker contends that his convictions for aggravated murder, murder, and felonious assault are against the manifest weight of the evidence. However, in light of our resolution of the first assignment of error, we will consider Walker's arguments as they relate to his convictions for murder and felonious assault.

{¶28} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 390, 1997-Ohio-52, 678 N.E.2d 541. The Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶29}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting Martin.

**{¶30}** Walker argues that his convictions are against the manifest weight of the evidence because the video shows Walker and his group being patted down for weapons before they entered Tavo. The video also shows other patrons who were not searched before entering the bar. Therefore, he contends that it is highly probable that someone else brought the gun into Tavo.

**{¶31}** Despite Walker's arguments, this is not the exceptional case where the evidence weighs heavily against his convictions. The video of the patdown does not override Walker's actions during the fight. As discussed above, the video shows Walker punching Shannon and also hitting him with a bottle. The video then shows Walker pull an object out of his waistband and walk behind a pillar that is right next to the dance floor. The fight spills over to the area next to the dance floor and the pillar where Walker was standing. Shannon is bent forward, with his back to where Walker was standing. There is a large flash, which was the gunshot. Walker then is seen running

from behind the other side of the pillar and across the dance floor toward an exit door. As Walker was running, the video shows him fumbling with his waistband.

{¶32} Based on this evidence, we cannot say the jury clearly "lost its way" and created such a manifest miscarriage of justice that Walker's murder and felonious assault convictions must be reversed and a new trial ordered.

{¶33} Therefore, the fifth assignment of error is moot and the sixth, seventh, and eighth assignments of error are overruled.

Jury Instructions

{¶34} In the ninth and tenth assignments of error, Walker challenges the trial court's jury instructions on complicity and flight. "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's issuance of the instruction constituted an abuse of discretion under the facts and circumstances of the case." *State v. Williams*, 8th Dist. Cuyahoga No. 90845, 2009-Ohio-2026, ¶ 50, citing *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989). Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984.)

{¶35} Walker first argues that the trial court should not have given an instruction on complicity because the evidence did not support it. He contends there is no evidence that he conspired with Steele, Shabazz, and Johnson, and he did not have a gun, nor did he shoot the gun.

**{¶36}** In the instant case, the evidence adduced at trial was sufficient to warrant an instruction on complicity. Specifically, the video shows Steele, Shabazz, Walker, and Johnson all participating in the fight, attacking Shannon and Anderson. This testimony was sufficient for the trial court to properly exercise its discretion and give a complicity instruction.

**{¶37}** Walker next argues the flight instruction was unwarranted because it was a natural reaction for people to run out of a bar after a gunshot.

**{¶38}** In the instant case, the trial court instructed the jury that:

Testimony has been admitted indicating that the defendants fled the scene. You are instructed that the fact that any one or both of the defendants fled the scene does not raise presumption of guilt but it may tend to indicate the defendant's consciousness or awareness of guilt.

If you find that the facts do not support that any one or both of the defendants fled the scene, or if you find that some other motive prompted any one or both of the defendant[s'] conduct, or if you are unable to decide what any one or both of the defendant[s'] motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that any one or both of the defendants engaged in such conduct and if you decide that any one or both of the defendants was motivated by a consciousness or an awareness of guilt, you may, but are not required to, consider that evidence in deciding whether any one or both of the defendants is guilty of the crime charged. You alone will determine what weight if any to give to this evidence.

**{¶39}** In *Taylor*, the Ohio Supreme Court held that evidence of flight is admissible to show consciousness of guilt. *Id.*, 78 Ohio St.3d at 27, 1997-Ohio-243, 676 N.E.2d 82. This court has previously defined flight as "some escape or affirmative attempt to avoid apprehension." *State v. Wesley*, 8th Dist. Cuyahoga No. 80684, 2002-Ohio-4429, ¶ 19. It has long been recognized that it is not an abuse of discretion for a trial court to

provide a jury instruction on flight if there is sufficient evidence presented at trial to support that the defendant attempted to avoid apprehension. *State v. Kilpatrick*, 8th Dist. Cuyahoga No. 92137, 2009-Ohio-5555, ¶ 16, citing *State v. Benjamin*, 8th Dist. Cuyahoga No. 80654, 2003-Ohio-281.

{¶40} In the instant case, the trial court instructed the jury that it may consider Walker's flight from Tavo after shooting Shannon as consciousness of guilt but that "flight does not in and of itself raise the presumption of guilt." Therefore, the instruction correctly advised the jury not to consider evidence of Walker's departure from the scene if they find that it was not motivated by consciousness of guilt. Because the trial court must presume that the jury followed that instruction, we cannot say that the trial court abused its discretion. *State v. Hamilton*, 8th Dist. Cuyahoga No. 86520, 2006-Ohio-1943, ¶ 39, *discretionary appeal not allowed*, 111 Ohio St.3d 1416, 2006-Ohio-5083, 854 N.E.2d 1094.

{¶41} Therefore, the ninth and tenth assignments of error are overruled.

<u>Ineffective Assistance of Counsel</u>

{¶42} In Walker's pro se supplemental assignment of error, he argues that he received ineffective assistance of counsel when trial counsel failed to challenge the state's expert witness on ballistics.

{¶43} In order to establish a claim of ineffective assistance of counsel, Walker must demonstrate that: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense. *Strickland v.*

*Washington*, 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). In Ohio, an attorney properly licensed is presumed competent. *State v. Lott*, 51 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990). The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

**{¶44}** Walker argues trial counsel was ineffective for failing "to request a suppression hearing" on the state's second ballistic expert witness's evidence regarding the gun shell casing found at Tavo. We disagree.

**{¶45}** In the instant case, two detectives and a forensic scientist testified that they observed a spent bullet and a large casing at the crime scene. The state admitted into evidence pictures of both a spent bullet and a large casing. To establish ineffective assistance of counsel for failure to file a motion to suppress, the defendant must prove that there was a basis to suppress the evidence in question. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35. Here, there was no basis to suppress the evidence in question.

**{¶46}** Therefore, Walker's pro se supplemental assignment of error is overruled.

**{¶47}** Accordingly, we vacate his aggravated murder conviction and sentence, affirm his remaining convictions, and remand the matter for resentencing.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
MELODY J. STEWART, J., CONCUR