**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Walker,* Slip Opinion No. 2016-Ohio-8295.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8295

THE STATE OF OHIO, APPELLANT, *v.* WALKER, APPELLEE

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Walker,* Slip Opinion No. 2016-Ohio-8295.]**

*Criminal law—Aggravated murder—R.C. 2903.01—Prior calculation and design—The elements for purpose and prior calculation and design are distinct, and the state must prove both to support a conviction of aggravated murder under R.C. 2903.01.*

(No. 2014-0942—Submitted August 30, 2016—Decided December 23, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 99998, 2014-Ohio-1827.

_____

**SYLLABUS OF THE COURT**

The elements of purpose and prior calculation and design are distinct, and the state must prove both to support a conviction of aggravated murder under R.C. 2903.01.

_____

**LANZINGER, J.**

{¶ 1} We accepted this discretionary appeal by the state of Ohio from a judgment of the Eighth District Court of Appeals that reversed a conviction of aggravated murder because it was not supported by sufficient evidence of prior calculation and design. During a bar fight, Dajhon Walker knowingly killed Antwon Shannon, and for that act Walker was properly convicted of felony murder under R.C. 2903.02(B). But the evidence did not show that this killing was done with prior calculation and design as required to sustain a conviction for aggravated murder. The elements of purpose and of prior calculation and design are distinct, and the state must prove both to support a conviction of aggravated murder under R.C. 2903.01.

{¶ 2} We therefore affirm the judgment of the court of appeals.

## RELEVANT FACTS

*Trial Evidence*

{¶ 3} Antwon Shannon was killed during a bar fight that took place in the early morning hours of February 19, 2012, at the Tavo Martini Lounge, a Cleveland night club. Although the state presented witness testimony and the testimony of detectives and forensic experts at the jury trial, the primary evidence of the sequence of the events came from video footage recorded by 16 surveillance cameras located in and around the club.

{¶ 4} The videos show that the victims, Antwon Shannon and Ivor Anderson, arrived at the club at approximately 12:27 a.m. and that they then began to drink and socialize. At 1:56 a.m., they were on the dance floor when Robert Steel, who also was dancing, began to twirl a glass of champagne in the air. Some of Steel's champagne spilled on Anderson, who responded with a remark. After dancing a bit longer and talking to a friend who was drinking champagne from a bottle, Steel began to talk to a group of people who were not identified at trial.

{¶ 5} Meanwhile, Walker, Derrell Shabazz, and Otis Johnson were in a different area of the club, drinking and intermittently stopping to chat with one another in an outside hallway. At 2:01, Johnson made his way from the outside hallway onto the dance floor and over to Steel and the others, followed a minute later by Walker and Shabazz. The group talked on and off for the next nine minutes, repeatedly looking in the direction of Anderson and Shannon. The melee began at 2:11 a.m., when Steel ran at Anderson from behind and hit him with a champagne bottle that glanced off Anderson and hit Eunique Worley in the forehead. Once Steele started the fight, others became involved.

{¶ 6} Walker joined in, hitting Shannon and throwing a bottle at him. Walker then hopped backwards, grabbing at his waistband, hunching over and moving to the side. Walker slipped and fell on Shannon, and Shabazz slipped and fell on Walker. All three recovered and stumbled in different directions: Shannon moved away from the fight, Walker went out of the cameras' view to the corner of the room behind a pillar, and Shabazz went over to Johnson, who apparently by mistake was hitting a member of their own group. A woman who had joined in the fight shoved Anderson backwards, propelling the group to the corner where Walker had gone. The video footage shows a gunshot flash a few seconds later with everyone in the club scattering. Walker appeared from the other side of the pillar fumbling with his waistband, and he and Shabazz hurried out of the area together.

{¶ 7} Shannon was shot in the back from a distance of one to two feet by a .45 caliber bullet, which passed through his chest. Shannon died soon after.

*Convictions and Appeal*

{¶ 8} A Cuyahoga County Grand Jury indicted Walker and Shabazz for aggravated murder, felony murder, having weapons while under a disability, and six counts of felonious assault (three pertaining to Shannon, one to Anderson, and two to Worley), along with firearm specifications. At a joint trial with Shabazz, the jury acquitted Walker of the felonious-assault counts against Worley but found

him guilty of aggravated murder, felony murder, and four counts of felonious assault, and the trial court found him guilty of having a weapon while under a disability. Shabazz was sentenced to 22 years to life in prison, and Walker was sentenced to 25 years to life.

{¶ 9} Walker appealed to the Eighth District Court of Appeals, arguing that his aggravated-murder conviction was not supported by sufficient evidence. The appellate court agreed and concluded that the state had failed to establish that Walker acted with prior calculation and design. 2014-Ohio-1827, 10 N.E.3d 200, ¶ 21 (8th Dist.). Relying on the standard set forth in *State v. Taylor*, 78 Ohio St.3d 15, 676 N.E.2d 82 (1997), the court held that there was no evidence that Walker and Shannon knew one another, that the shooting occurred from a spontaneous eruption of events, or that Walker gave no thought to choosing the murder site beforehand. The court therefore reversed the conviction for aggravated murder but upheld the convictions for felony murder and the remaining offenses and remanded the matter to the trial court for resentencing.

{¶ 10} Shabazz also appealed his convictions and sentence. Relying on its decision in Walker's appeal, the Eighth District Court of Appeals vacated Shabazz's aggravated-murder conviction. *State v. Shabazz*, 8th Dist. Cuyahoga No. 100021, 2014-Ohio-1828. The appellate court also vacated Shabazz's felony-murder and weapons-disability convictions, which were based on his complicity in Walker's use of a firearm, as well as a felonious-assault conviction that was based on complicity. It affirmed Shabazz's two remaining felonious-assault convictions, which were based on the use of champagne bottles. We initially accepted the state's appeal, but we later dismissed it as having been improvidently allowed. *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119.

{¶ 11} We accepted the state's appeal in Walker's case on two propositions of law: one regarding appellate review of sufficiency arguments in general, and one

4

concerning the evidence required in order to reasonably infer the element of prior calculation and design.

### LEGAL ANALYSIS

{¶ 12} To determine whether a conviction is supported by sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The weight of the evidence and credibility of witnesses, however, are matters primarily for the finder of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *see State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

### *Count Two: Felony Murder*

{¶ 13} The jury found Walker guilty, and the court of appeals upheld Walker's conviction of murder on Count Two. The felony murder statute states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *" R.C. 2903.02(B). And with the underlying offense of violence being felonious assault, felony murder is supported by evidence that establishes that the defendant knowingly caused physical harm to the victim. *State v. Miller*, 96 Ohio St. 3d 384, 2002-Ohio-4931, 775 N.E.2d 498.

{¶ 14} The evidence fully supported this count.

### *Count One: Aggravated Murder*

{¶ 15} Under the aggravated-murder statute, the state was required to prove beyond a reasonable doubt that Walker "purposely*, and with prior calculation and design*, cause[d] the death" of Antwon Shannon. (Emphasis added.) R.C. 2903.01(A). The question raised by the state is whether sufficient evidence of prior

calculation and design was presented to support Walker's conviction of aggravated murder.

{¶ 16} When the Revised Code was adopted in 1953, the crime of murder in the first degree—the precursor to aggravated murder—prohibited purposeful killing with "deliberate and premeditated malice." Former R.C. 2901.01. Under this earlier standard, "a killing could be premeditated even though conceived and executed on the spur of the moment. The only requirement was that the malicious purpose be formed before the homicidal act, however short in time." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).

{¶ 17} When it amended the aggravated-murder statute, R.C. 2903.01(A), to provide that "[n]o person shall purposely, and with prior calculation and design, cause the death of another," the General Assembly explicitly rejected the notion that brief premeditation prior to a murder could establish prior calculation and design:

> [R.C. 2903.01(A) employs] the phrase, "prior calculation and design," to indicate an act of studied care in planning or analyzing the means of the crime, as well as a scheme compassing the death of the victim. Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must be sufficient to meet the proposed test of "prior calculation and design." In this context, *momentary deliberation is considered insufficient* to constitute a studied scheme to kill.

(Emphasis added.) Ohio Legislative Service Commission, *Proposed Ohio Criminal Code*: *Final Report of the Technical Committee to Study Ohio Criminal Laws and Procedures*, at 71 (1971). *See also State v. Taylor*, 78 Ohio St.3d 15, 18-

6

19, 676 N.E.2d 82 (1997). The General Assembly has defined the mens rea of purpose, stating that "[a] person acts purposely when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). Evidence of purpose, however, does not automatically mean that the element of prior calculation and design also exists. *State v. Campbell,* 90 Ohio St.3d 320, 341, 738 N.E.2d 1178 (2000) ("purpose to kill is not the same thing as prior calculation and design and does not by itself satisfy the *mens rea* element of R.C. 2903.01(A)"). A purposeful killing committed with prior calculation and design is aggravated murder: "No person shall purposely*, and with prior calculation and design*, cause the death of another * * *." (Emphasis added.) R.C. 2903.01(A).

{¶ 18} The phrase "prior calculation and design" by its own terms suggests advance reasoning to formulate the purpose to kill. Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death. The General Assembly has determined that it is a greater offense to premeditate or to plan ahead to purposely kill someone. All prior-calculation-and-design offenses will necessarily include purposeful homicides; not all purposeful homicides have an element of prior calculation and design.

{¶ 19} Since the enactment of R.C. 2903.01 in 1974, we have repeatedly emphasized that there is no "bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." *State v. Taylor*, 78 Ohio St.3d 15, 20, 676 N.E.2d 82 (1997); *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 61; *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 148.

{¶ 20} We traditionally consider three factors in determining whether a defendant acted with prior calculation and design: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give

7

thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events?' " *State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997), quoting *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).

{¶ 21} We have upheld aggravated-murder convictions, holding that prior calculation and design existed when a defendant threatened to obtain a weapon and kill his victim and later carried out that plan. *State v. Sowell*, 39 Ohio St.3d 322, 333, 530 N.E.2d 1294 (1988). *See also State v. Toth*, 52 Ohio St.2d 206, 213, 371 N.E.2d 831 (1977), and *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 80-84 (both upholding aggravated-murder convictions when the defendant had previously threatened to kill the victim). Shooting a person execution-style may also establish, at least in part, prior calculation and design. *State v. Palmer*, 80 Ohio St.3d 543, 569-570, 687 N.E.2d 685 (1997); *Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 65, citing *State v. Campbell*, 90 Ohio St.3d 320, 330, 738 N.E.2d 1178 (2000).

*The* Taylor *Case*

{¶ 22} The court of appeals decided Walker's case by applying the factors in *Taylor* at 19. In *Taylor*, another bar homicide, the circumstances surrounding the shooting show a scheme designed to implement the calculated decision to kill. Taylor knew his victim, who had previously dated Taylor's girlfriend. *Id.* at 21-22. And knowing that the victim frequently drank at a certain bar, Taylor chose to take a gun there. He, the girlfriend, and the victim had all been drinking at the bar for 20 to 30 minutes before he shot the victim after an argument. *Id.* at 22. As the victim lay wounded on the floor after several shots, Taylor approached and fired three or four more shots in the victim's back. *Id.* at 22. Pursuing and killing a fleeing or incapacitated victim after an initial confrontation strongly indicates prior calculation and design. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 45, citing *State v. Robbins*, 58 Ohio St.2d 74, 78-79, 388 N.E.2d 755

(1979), *State v. Claytor*, 61 Ohio St.3d 234, 241, 574 N.E.2d 472 (1991), and *Cotton,* 56 Ohio St.2d at 9-10, 381 N.E.2d 190. *See also Palmer*, 80 Ohio St.3d at 569-570, 687 N.E.2d 685 (after victim had fallen to the ground, defendant shot the victim in the head in an execution-style manner).

{¶ 23} When examining the facts in Walker's case in light of the questions asked in *Taylor*, it appears from the evidence that Walker and Shannon did not know each other, that the killing resulted from a spontaneous eruption of events, and that Walker had not given thought to choosing the murder site. Additionally, Walker did not give thought or preparation to choosing the murder weapon: from his approach to the dance floor at approximately 2:02 a.m. until the fight began at 2:11 a.m., Walker did not move from the area, meaning that the weapon was already on his person before he was even aware of Steel's interaction with Anderson.

{¶ 24} There is no evidence that Walker and his friends devised a scheme to shoot Shannon and then carried it out. The plan that existed among Walker's group that evening was a plan to commit felonious assault, not murder. The prosecutor understood this fact because he so characterized the reason behind the murder: Shannon "died because *the fight got so escalated* and the poor guy was so big that two little half pints couldn't take him over so what do you need? *Your fists aren't good enough. You take out a piece of metal * * *.*" (Emphasis added.)

{¶ 25} The video recordings of the incident show nothing that was carefully planned once the fight began. It quickly turned into a free-for-all with people outside Walker's original small group jumping in, two of Walker's original group fighting each other, and Shannon, Walker, and Shabazz slipping and falling on top of one another. In the middle of this fight, a single shot was fired in the presence of dozens of people.

**{¶ 26}** Witnesses provided testimony to the jury of speculation as to what had happened,[1] but the videos show an assault that quickly escalated into chaos. For approximately 20 seconds of that chaos, Walker was obscured from the security cameras by a pillar. A jury could reasonably infer that during that time, Walker decided to kill Shannon by shooting him, but it could not reasonably infer that he planned the murder beforehand with prior calculation and design. The element of prior calculation and design requires evidence that supports more than the inference of purpose. Inferring prior calculation and design from an inference of purpose is mere speculation. Accordingly, Walker's conviction for aggravated murder was not supported by sufficient evidence.

## CONCLUSION

**{¶ 27}** The evidence presented by the state in this case shows that Antwon Shannon was shot during a bar fight with Dajhon Walker and others. Neither the security cameras that recorded the fight nor the witnesses to the shooting were able to see who fired the shot. But the cameras did show that Walker moved away from the fight, and out of camera range, for approximately 20 seconds before the gunshot. Thus, there was insufficient evidence of prior calculation and design. We therefore affirm the judgment of the court of appeals vacating Walker's aggravated-murder conviction.

**{¶ 28}** Aggravated murder is a purposeful killing that *also* requires proof of prior calculation and design: forethought, planning, choice of weapon, choice of means, and the execution of the plan. In this case, there is no evidence that Walker planned Shannon's murder beforehand. Walker knowingly killed Shannon and was

---

[1] For example, Anderson testified that Steel immediately began conspiring with Walker and Shabazz after spilling the champagne, but the surveillance video shows that Walker and Shabazz were not on the dance floor at that time. Anderson also testified he believed it was Shabazz who attacked him with a champagne bottle, but the surveillance video shows that it was Steel, not Shabazz, who attacked Anderson.

properly convicted of felony murder, but he did not commit aggravated murder. We therefore affirm the judgment of the Eighth District Court of Appeals vacating the aggravated-murder conviction and remanding the cause to the Court of Common Pleas of Cuyahoga County for resentencing.

Judgment affirmed

and cause remanded.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY and FRENCH, JJ.

_____

**O'DONNELL, J., dissenting.**

{¶ 29} Respectfully, I dissent.

### Sufficiency of the Evidence

{¶ 30} The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court to determine whether, after construing all reasonable inferences in favor of the state, any reasonable trier of fact could find that the state presented evidence to prove each of the material elements of the offense beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph two of the syllabus.

{¶ 31} As we explained in *Jenks*, "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed,* [the evidence] would convince

the average mind of the defendant's guilt beyond a reasonable doubt.' " (Emphasis and brackets sic.) *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), quoting *Jenks* at paragraph two of the syllabus.

**Manifest Weight**

{¶ 32} A sufficiency analysis is different from that undertaken in determining whether a conviction is against the manifest weight of the evidence. *Thompkins* at paragraph two of the syllabus. In considering a manifest-weight claim, the appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 33} Thus, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 34} Notably, the state's brief cites five recent cases in which the Eighth District Court of Appeals has misapplied these standards in holding that the state presented insufficient evidence of prior calculation and design: *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578 (the appellate court rejected an inference of prior calculation and design when the accused and the victim argued about money over an extended period, the accused fired two shots, and then he fired a third shot while the victim was down on his knees); *State v. Woods*, 8th Dist. Cuyahoga No. 99630, 2014-Ohio-1722 (the appellate court rejected an inference of prior calculation and design when the accused lured the victim to his room and strangled her); *State v. Shabazz*, 8th Dist. Cuyahoga No. 100021, 2014-Ohio-1828 (the appellate court rejected the inference of prior calculation and design to support

aggravated murder when Shabazz and his co-defendant were seen talking before an attack on Ivor Anderson and Antwon Shannon); *State v. Hicks*, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978 (the appellate court rejected an inference that the accused planned to kill his estranged wife while on a date night after arguing with her earlier in the evening); *State v. Durham*, 8th Dist. Cuyahoga No. 102654, 2016-Ohio-691 (the appellate court rejected the inference that the accused had lured the victim behind a building before shooting him in the head).

{¶ 35} The consequences of misapplying the standard of review are significant. When a reviewing court reverses a conviction as against the manifest weight of the evidence, a new trial is permitted. *Tibbs* at 45; *C.K. v. State*, 145 Ohio St.3d 322, 2015-Ohio-3421, 49 N.E.3d 1218, ¶ 14. However, when an appellate court reverses a conviction on the basis that it is supported by insufficient evidence, the Double Jeopardy Clause bars retrial. *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 15.

{¶ 36} In this case, the Eighth District was required to view the evidence in the light most favorable to the state and to draw all reasonable inferences in the state's favor when it reviewed Walker's conviction for sufficient evidence of prior calculation and design. It failed in that duty.

### Prior Calculation and Design

{¶ 37} Prior to 1974, Ohio law "described 'deliberate and premeditated malice' as constituting first degree murder. * * * [A] killing could be premeditated even though conceived and executed on the spur of the moment. The only requirement was that the malicious purpose be formed before the homicidal act, however short in time." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).

{¶ 38} Effective January 1, 1974, however, the General Assembly amended R.C. 2903.01(A) to define the offense of aggravated murder, providing that "[n]o

person shall purposely, and with prior calculation and design, cause the death of another." Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1900. The term "prior calculation and design" is not defined by statute, but we have stated:

> The apparent intention of the General Assembly in employing this phrase was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill. Thus, instantaneous deliberation is not sufficient to constitute "prior calculation and design."

*Cotton* at 11.

{¶ 39} As we more recently explained in *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930:

> No bright-line test exists that "emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." *State v. Taylor,* 78 Ohio St.3d 15, 20, 676 N.E.2d 82 (1997). However, when the evidence presented at trial "reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." *State v. Cotton,* 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph three of the syllabus.

*Maxwell* at ¶ 148.

**{¶ 40}** In *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, we reiterated three "pertinent" considerations in determining whether prior calculation and design existed: " '(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events?" ' " *Id*. at ¶ 56, quoting *Taylor*, 78 Ohio St.3d at 19, 676 N.E.2d 82, quoting *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976). However "pertinent" they may be, we have never held that these are the *exclusive* factors to be applied in determining whether the accused acted with prior calculation and design.

**{¶ 41}** Rather, we have recognized that "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes," *State v. Coley*, 93 Ohio St.3d 253, 264, 754 N.E.2d 1129 (2001), as long as the killer's actions "went beyond a momentary impulse and show that he was determined to complete a specific course of action," *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 46.

**{¶ 42}** In *State v. Palmer*, 80 Ohio St.3d 543, 567-568, 687 N.E.2d 685 (1997), we explained that sufficient evidence of prior calculation and design existed when, after being involved in a minor accident with a pickup truck, Donald L. Palmer Jr. exited the vehicle with a loaded revolver that was cocked and ready to fire and shot the truck's driver, Charles Sponhaltz, twice in the head. *Id*. at 543, 568. Although the killing took only moments, we concluded that "[t]he evidence, when viewed in a light most favorable to the state, was more than sufficient to show that [Palmer] had adopted a plan to kill Sponhaltz prior to exiting [the] vehicle and that, with a level of precision, [Palmer] followed through on his calculated decision to kill." *Id.* at 569.

**{¶ 43}** Similarly, in *Taylor,* we explained that only a short time is needed to form prior calculation and design. In that case, Michael N. Taylor objected when Marion Alexander asked Taylor's girlfriend to play a song for him on the jukebox. 78 Ohio St.3d at 16, 676 N.E.2d 82. Taylor told his girlfriend they were leaving and then walked up to Alexander and shot him multiple times, killing him. *Id.* at 16-17. We noted there that by bringing a firearm to a bar that he knew the victim frequented, the jury could infer that the accused intended to use it, *id.* at 22, and we concluded that "[e]ven though most of the evidence indicates that the time between the jukebox incident and the shooting was only two or three minutes, there was more than sufficient evidence for the jury to reasonably have found that [Taylor], with prior calculation and design, decided to shoot Alexander in that space of time," *id.*

### The State Presented Sufficient Evidence
### of Prior Calculation and Design

**{¶ 44}** Viewing the evidence in a light most favorable to the state, it is manifest that sufficient evidence of prior calculation and design exists to support Walker's conviction. Anderson testified that after he spoke to Steel, he suspected he might be attacked by Steel and his group, and the camera footage shows the group gesturing and looking toward him over an extended period of time. The video also reveals their preparations for the attack. Steel concealed an empty champagne bottle, Shabazz removed his glasses, and an unidentified accomplice zipped up his coat. Johnson also concealed a champagne bottle behind his forearm and walked across the dance floor, putting Anderson between himself and Steel. Steel then pointed toward Anderson as he danced, and the unidentified member of Steel's group stood close by.

**{¶ 45}** Shabazz and Walker were watching Shannon when the fight started. Walker specifically targeted Shannon—circling the fight to reach him, punching him, and attempting to hit him with a champagne bottle. Based on this evidence,

the jury could reasonably infer that the attack on Anderson and Shannon was preplanned and coordinated and it could also infer from the use of champagne bottles in the attack that there was an intent to cause serious injury or death.

**{¶ 46}** Most importantly, the video reveals that Walker reached for his waistband and withdrew from the fight for approximately 20 seconds. From this evidence, the jury could reasonably infer that he was holding a firearm for that entire time, which gave him sufficient time and opportunity to reflect on whether to use it, and the jury could also reasonably conclude that within that 20 seconds Walker conceived a plan to kill either Shannon or Anderson, strategically placing himself behind the pillar and waiting for a clear shot. He then shot Shannon in the back at close range, and when the shot sounded, Shabazz showed no noticeable reaction, from which the jury could reasonably infer that Shabazz was not surprised by the shooting. And, after Walker emerged from behind the pillar, Shabazz is seen on the video tapping him on the chest in what the jury could reasonably view as a celebratory gesture.

**{¶ 47}** Walker does not dispute that the evidence established that he murdered Shannon. And, based upon the evidence presented at trial, the jury reasonably concluded that he acted with prior calculation and design.

## Conclusion

**{¶ 48}** In this case, the court of appeals failed to view the evidence in a light most favorable to the state and further failed to draw all reasonable inferences in favor of the state; it therefore substituted its judgment for that of the jury in ruling that the state failed to present sufficient evidence that Walker murdered Shannon with prior calculation and design. The jury reasonably concluded that by participating in a coordinated and preplanned attack against Shannon and Anderson and by drawing a firearm, withdrawing from the attack, and waiting behind a pillar for 20 seconds before shooting Shannon in the back, Walker committed aggravated murder with prior calculation and design.

**{¶ 49}** The pattern exhibited by the appellate court in failing to draw all reasonable inferences in favor of the state when considering a sufficiency challenge demonstrates a lack of understanding of the applicable legal standards and in my view results in a miscarriage of justice.

**{¶ 50}** For these reasons, I would reverse the judgment of the court of appeals, reinstate the judgment of the trial court, and instruct the appellate court to adhere to the proper sufficiency analysis in all future cases.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder and Anna M. Faraglia, Assistant Prosecuting Attorneys, for appellant.

Leif B. Christman; Russell S. Bensing; and Dinn, Hochman, & Potter, L.L.C., and Justin Withrow, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and Erika B. Cunliffe, Cullen Sweeney, and Jeffrey Gamso, Assistant Public Defenders, urging affirmance for amici curiae Cuyahoga County Public Defender and Cuyahoga Criminal Defense Lawyers Association.

_____